Ellen J. Harker's Estate. J. M. Titlow's Appeal.
Ellena B. White's Appeal.

167 197
167 206

*Trusts and trustees—Decedent's estate—Evidence.*

Where a daughter whose mind was so weak that she was incapable of managing her own property assigned the proceeds of a life insurance policy of five thousand dollars on the life of her deceased husband to her mother without any valuable consideration, but upon the understanding that the income was to be used for the maintenance and comfort of the daughter; and the mother supported the daughter for twenty-five years, making no charges for support or care, and rendering no account for the income of the fund, the daughter cannot, after the death of her mother, sustain a claim for interest on the fund during the time her mother held it.

Argued March 8, 1895. Appeals, Nos. 352 and 368, Jan. T., 1895, by T. M. Titlow et al., executors of Ellen J. Harker, deceased, and by Ellena B. White, and Guarantee Trust & Safe Deposit Company, trustee of Ellena B. White, from decree of O. C., Berks Co., dismissing exceptions to adjudication in estate of Ellen J. Harker, deceased. Before WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Decree modified.

Exceptions to adjudication.

The adjudication by BLAND, J., was in part as follows:

" 1. That about the year 1863, Ellena B. Harker, now Ellena B. White, the claimant, a daughter of Ellen J. Harker, the decedent, was joined in marriage with one Meyer Hermann, and after her marriage resided with her said husband in the city of Philadelphia, until sometime in the year 1865.

" 2. That on January 21, 1865, the New York Life Insurance Company, upon the application of said Meyer Hermann, issued a policy of insurance, numbered 29227, for the sum of $5,000, upon the life of said Meyer Hermann, payable upon his death to his said wife, Ellena B. Hermann, now Ellena B. White.

" 3. That after the issuance of said policy, and sometime during the year 1865, Meyer Hermann left the city of Philadelphia for San Francisco ; that he subsequently took passage from San Francisco on a vessel bound for Portland, Oregon ; that the vessel on which he sailed was wrecked on the bar at

the mouth of the Columbia river, and he was drowned, or otherwise came to his death, in the wreck.

."4. That on March 29, 1867, Ellena B. Hermann, now Ellena B. White, the claimant, executed under seal, and delivered, an assignment of said policy of insurance to her mother, Ellen J. Harker, the decedent, in the following form :

"For value received, I do hereby assign and transfer unto Ellen J. Harker, the annexed policy of insurance, issued by the New York Life Insurance Company, upon the life of Meyer Hermann, and known as No. 29227, and all dividends, benefit, and advantage to be had or derived therefrom. To have and to hold the same unto the said Ellen J. Harker, her executors, administrators and assigns.

"Witness my hand and seal this 29th day of March, one thousand eight hundred and sixty-seven.

ELLENA B. HERMANN [SEAL.]

"Sealed and delivered in the presence of

"JOSHUA SPERING,

"H. C. YOUNG."

"[5. That no valuable consideration passed from Ellen J. Harker to Ellena B. Hermann for the assignment mentioned and found in the 4th finding of fact, and that the statement or recital therein of a valuable consideration was merely formal. That no valuable consideration passed from Ellen J. Harker to Ellena B. Hermann at the time of the execution of the assignment, or at any other time ; and that it was not intended by the parties to the assignment, that a valuable consideration should at any time pass from Ellen J. Harker for the assignment. . That the inducement and motive of the assignment arose out of the following facts : Ellena B. Hermann was at the time of the assignment, is now, and during the whole interval of time, has been a person of weak mind, and incapable of the custody and management of money. At the time the assignment was made she was living with her mother, Ellen J. Harker, and was being supported by her. She was absolutely, and very properly, subject to and under the control of her mother, Mrs. Harker. Mrs. Harker knew that Mrs. Hermann was weak in mind and unfit to have the possession and disposal of money, and determined that any money which should be paid upon the policy should not be paid to Mrs.

Hermann, but to herself, in trust, and for the use of Mrs. Hermann. That in execution of her design to take the proceeds of the insurance policy in trust for Mrs. Hermann, Mrs. Harker required and obtained from Mrs. Hermann the assignment of the policy and its proceeds, mentioned and found in the 4th finding of fact. That Mrs. Harker declared, at the execution of the assignment of the policy, on March 29, 1867, in the presence and hearing of the witnesses to the assignment and of Mrs. Hermann, the assignment was executed and delivered by Mrs. Hermann upon faith of the declaration, that Mrs. Hermann was unfit, by reason of mental weakness, to receive the money payable on the policy, and that the object of the assignment was to enable her, Mrs. Harker, to draw the money from the company, in order that she might receive and hold it in trust for Mrs. Hermann, and invest it so that Mrs. Hermann would get the benefit of it; and that she, Mrs. Harker, would pay it out to Mrs. Hermann, or for her use, as she might need it. That Mrs. Hermann executed and delivered, and Mrs. Harker accepted the assignment of said policy, in pursuance of an understanding and agreement between them that she, Mrs. Harker, should invest the proceeds of the policy for the use of Mrs. Hermann, and pay them to the latter, or for her use, as her needs should require.] [1]

"6. That on June 26, 1867, Ellen J. Harker, the decedent, received from the New York Life Insurance Company, in full for all claim for loss on said policy, the sum of $4,975.07 . . . . That Ellen J. Harker, the decedent, received the said $4,975.07 from said insurance company, in trust and for the use of said Ellena B. Hermann, now Ellena B. White, the claimant, in pursuance of the said understanding and agreement mentioned and found in the fifth finding of fact. That Mrs. Harker, on various occasions, after she received said insurance money, the last occasion being within a month of her decease, declared that she held it for the claimant.] [2]

"7. That having received the proceeds of said policy as mentioned and found in the 5th and 6th findings of fact, Ellen J. Harker invested the same in real estate, in the city of Philadelphia, in her own name, and it continued to be invested in real estate in her own name, up to the time of her death. That Ellen J. Harker died seized of a large amount of real estate,

situate in Philadelphia and Reading, Pennsylvania, Cape May, New Jersey, and other places, comprising 21 houses and lots in Philadelphia, a house and lot in Reading, two lots in Cape May, an unimproved lot at Engleside, and one at Chiselhurst. That no proof was submitted of the market value of said real estate, but it does appear in proof, and is found as a fact, that it is subject to mortgages amounting in the aggregate to $20,146, and to a ground rent of $4,200.

" 8. That Ellena B. Hermann resided with, and was wholly maintained by her mother, Ellen J. Harker, from the time of her marriage with Meyer Hermann in 1863 until 1869, when she married one Thomas J. White, and left her mother to reside with him ; that Thomas J. White died in the month of November, 1883 ; that during the life of Mr. White and his marriage with the claimant, Mrs. Harker supplied money and clothing to the claimant, and the claimant during a period of 7 months in the year 1883, while Mr. White was still living, lived with and was entirely maintained by her mother, Mrs. Harker ; and that from the death of Mr. White in November, 1883, to March 1, 1893, Mrs. Harker, the decedent, supported, clothed and wholly maintained Ellena B. White, the claimant.

" 9. That from the assignment of the policy, March 29, 1867, to her death, on March 15, 1893, the decedent, Ellen J. Harker, paid to, and for the use of, Ellena B. White, the claimant, for her maintenance and support, the sum of $6,200, for which her estate is entitled to credit on account of the said trust money and its interest ; and that there is now due to Ellena B. White, on account of said trust fund of $4,975.07, and its interest from the date of its receipt by the decedent, June 26, 1867, the sum of $6,954.08.

" 10. That Ellena B. White, the claimant, is a person without the strength of will required to resist the persuasions and importunities of others, and is without any appreciation of the value of money, or prudence in its use ; that she is so infirm of mind as to be entirely subject to the control of those about her, and to constantly expose her property to their cupidity and dishonesty. That since the death of the decedent, i. e., on August 28, 1893, while Mrs. White was on a visit to her sister, Emmarene H. Thimme, in the city of Reading, Mrs. White, without any valuable consideration passed, or contemplated,

assigned, of the expected proceeds of this claim, to Emmarene
H. Thimme $3,500; to Charles Harker Thimme, a minor child
of Emmarene H. Thimme, $50.00; and to Olga Viola Thimme,
another minor child of Emmarene H. Thimme, $50.00; and on
the same day executed a will bequeathing all her estate to the
said Emmarene H. Thimme.  That besides being helplessly weak
in mind, she is so afflicted in body, that she must be assisted up
and downstairs, and is unable, on account of weakness in her
wrists, to cut her food.  That Ellena B. White, from her in-
firmities of mind and body is unfitted for the possession and
control of what may be decreed to her out of this estate, and
that it is necessary for her protection, to make the distribution
of her part of the estate to a trustee for her, to be held for her
benefit, until appropriate proceedings can be taken to secure
her interest.

     *    *    *    *    *    *    *    *

" Being satisfied by the evidence that the insurance money
was received by Mrs. Harker in trust for the claimant, my chief
concern and difficulty has been in determining the amount in
the hands of the decedent at her death.  Her executors say they
have found no account of the trust fund among her papers, and
instead of attempting to inform the court as to the amount of
money disbursed by the decedent to and for the use of the claim-
ant, since the assignment, have devoted themselves exclusively
to ignoring the trust.  Both of the marriages of the claimant
seem to have been such improvident ones as would be looked
for in one of her want of judgment, and it is plain to me that
the claimant was a constant charge upon her mother up to the
latter's death.  The decedent declared to Mrs. Obenhousen,
about a month before her death, that she held $5,000 for her
daughter; that she had not paid her all the interest; and that
her losses in rents had been so great that she had been unable
to supply her with the money she actually needed.  This testi-
mony tends to show that the principal, and a part of the interest,
was in the decedent's hands, at her decease, but it does not fix
the amount of interest accrued and held by her.  In the state-
ment submitted by the attorney of the claimant, she allows
credits for boarding, clothing and cash supplied and paid to and
for the claimant, amounting to $860.  This amount seems to
me preposterously small.  For three years before her marriage

with Mr. White in 1869, the claimant was entirely maintained by her mother; during her marriage with Mr. White she seems to have been largely dependent upon her, and for seven months in 1883 was living with and supported by her; and from Mr. White's death in 1883 to the death of the decedent, in 1893, was wholly maintained by the latter. The will of the decedent contemplated the expenditure of $20.00 a month by the trustee, for the support of the claimant, and it is probable that that sum was fixed by the decedent from her experience as to the cost of her maintenance. Taking everything into account, I have adopted that as a just standard of compensation to the decedent, and have allowed her $20.00 a month from the date of the assignment, March 29, 1867, to March 1, 1893, making a gross credit of $6,200. In a case presented as this one has been, mathematical certainty is out of the question, but considering all the facts before the court, I believe the conclusion come to is the most satisfactory attainable by me. I think I have allowed all that is due, and, it may be, somewhat more than is due; but having found the trust, the duty of accounting was placed by the law upon the executors. They professed inability to present any account upon the trust fund; and nothing was left for me to do (being certain that the credits allowed by the claimant were insufficient), but to determine the balance due, with such light as the evidence cast upon the question. All the declarations of the decedent proved in the case clearly denoted, or strongly implied, that the whole capital remained in her hands, and her statement to Mrs. Obenhausen, made shortly before her death, distinctly admitted that all the interest on the money had not been paid over to the claimant. I was originally inclined to find only the principal, in the hands of the decedent, but this could not be done without ignoring the declarations of the decedent as to the arrearages of interest. The interest from the receipt of the money to the present time amounts to $8,179.01, and the result of my finding is that $1,979.01 of it remains in the estate of the decedent. Not doubting as to the existence of the trust, the process by which I have arrived at the amount due the claimant, while not entirely satisfactory, seems the best possible upon the evidence, and a decree will accordingly be made in favor of the claimant for $6,954.06, in accordance with the ninth finding of fact. The

distribution will be made to the Pennsylvania Trust Company, in trust for Ellena B. White."

The claimant, Mrs. White, by her counsel filed exceptions to the credits allowed, and to the award of the money to the Pennsylvania Trust Company, and petitioned the court to award the money to the Guarantee Trust & Safe Deposit Company, whom she had selected and appointed as her trustee, which exceptions and petition were overruled. The executors also excepted to the adjudication.

Exceptions to adjudication were dismissed.

*Errors assigned* by J. M. Titlow et al., executors, among others, were (1, 2) portions of adjudication as above; (3-5) in dismissing exceptions to adjudication.

*Errors assigned* by Mrs. White et al. were in dismissing exceptions and refusing her petition.

*Jefferson Snyder*, of *Baer & Snyder*, for appellants, J. M. Titlow et al.—The evidence is not sufficient to vary or contradict the terms of the written instrument by which Mrs. Harker's title to the insurance money was secured: Phillips v. Meily, 106 Pa. 543; McFarlane & Co. v. Warfflein, 100 Pa. 519; Martin v. Berens, 67 Pa. 463; Hoopes v. Beale, 90 Pa. 83; Honesdale Glass Co. v. Storms, 125 Pa. 278.

The evidence submitted on behalf of the claimant does not fix any terms, conditions, or limitations to the alleged trust: Graham v. Graham, 34 Pa. 480; Wall's App., 111 Pa. 471; Huff v. Richardson, 19 Pa. 388; Suter v. Sheeler, 22 Pa. 308; Kyle v. Wells, 17 Pa. 286; Wesner v. Stein, 97 Pa. 322; Baugh v. White, 161 Pa. 632.

*Carrie B. Kilgore* and *David C. Harrington*, for appellee, Ellena B. White. — The evidence was sufficient to establish the trust: Real Est. Title Co.'s App., 125 Pa. 549; Hancock's App., 34 Pa. 155; Twitchell v. McMurtrie, 77 Pa. 383; Spencer v. Colt, 89 Pa. 314; Cullman v. Lindsay, 114 Pa. 166; Darlington's App., 86 Pa. 512; Clark v. Depew, 25 Pa. 509; Price's App., 54 Pa. 472; Clausers' Est., 84 Pa. 53; Church v. Ruland, 64 Pa. 432; Fahnestock's App., 104 Pa. 46.

*Carrie B. Kilgore* and *David C. Harrington*, for appellants, Ellena B. White and the Guarantee Trust & Safe Deposit Co., trustee of Ellena B. White.—The burden of showing precisely what has become of the assets of the estate is upon the accountant: Williamson's Est., 6 W. N. C. 471; Holloway's Est., 8 W. N. C. 148; Ex parte Cassel, 3 Watts, 442, 443; Romig's App., 84 Pa. 235; Bowman v. Herr, 1 P. & W. 282; Mylin's App., 7 Watts, 64; Schoch's App., 33 Pa. 351.

The court below awarded the money to the Pennsylvania Trust Company, of Reading, Pa., as trustee. No proceedings were had in any court for the appointment of a trustee, and it is submitted that the award of the money is unwarranted.

Mrs. White has by deed appointed the Guarantee Trust & Safe Deposit Company her trustee; she has exercised her right, and it does not stand in the mouth of any one to object. If she was capable of appointing her mother trustee, she is just as capable of selecting a new one, and she has exercised her judgment in selecting a very competent one.

*Jefferson Snyder*, of *Baer & Snyder*, *Philip S. Zieber* with him, for appellees, Laura V. Titlow, Emmarene H. Thimme, and the Pennsylvania Trust Company.

### TITLOW'S APPEAL.

OPINION BY MR. JUSTICE WILLIAMS, April 1, 1895:

There are two principal questions in this case. The first is over the effect of the assignment made by Mrs. Hermann, now Mrs. White, to her mother, Mrs. Harker, of the policy of insurance on the life of her husband made in 1865. The assignment was prima facie a transfer of the title to the proceeds of the policy to the assignee; and it cast upon the assignor the burden of showing that this was not its object as it was understood at the time by the parties. Considerable testimony was given for this purpose, and we concur with the learned judge in thinking that this testimony justifies the conclusion that the assignment was intended to put the mother in a position to collect and manage the insurance money in such way as should seem best to her, for the comfort and care of her daughter. The next question relates to the proper manner of stating an account between the mother, now deceased, and her daughter.

For more than a quarter of a century the parties have shown their own understanding of their relation to each other and to this fund.  No account of its investment, or of the items of receipts and expenditures from the income seems ever to have been asked or rendered.  It is conceded on all hands that the daughter needed, and it is clear that the mother has given her, the same affectionate supervision and maternal care as in the days of her childhood.  Her clothing, her board, her pocket money have all been supplied during most of these twenty-seven or eight years by the mother, and the question has never been considered whether the income from the insurance money was sufficient for this purpose or not.  This voluntary and unrewarded stewardship has now been closed by the death of the mother; and the daughter not content to receive the principal, for the very existence of which she is indebted to her mother's thrift and economy, seeks to charge interest upon it during the whole period and to allow a pittance only for her own support, and nothing for her mother's labor and care.  The orphans' court is clothed with full equity powers.  These parties never interpreted their relations to each other in this way while the mother lived and the daughter enjoyed her care, and we will not so interpret them now.  When the incapacity of the daughter for the management of her own affairs is considered; when the smallness of the income that could have been earned by this fund is also taken into account, and the absolute dependence of the daughter during most of this time on her mother for all the necessaries of life, we have no difficulty in concluding that the income was consumed year after year in a manner well understood, and intelligently acquiesced in by the daughter.  After a course of dealing extending over twenty-seven years we are fully justified in assuming that no account of receipts and expenditures was kept because none was contemplated or desired by the parties, and that, under all the circumstances of this case, the mother's judgment was deliberately and wisely trusted for the management of the fund and the expenditure of the income therefrom with no thought of an account in the mind of either.  Under such circumstances to charge the mother, as a trustee, with the interest for the whole time at the legal rate without knowing what she actually received; and to credit her with what we may guess she expended with no knowledge of

her actual expenditures, is to inflict upon her estate and her memory an injustice. The decree is affirmed so far as it charges the appellants with the principal of the insurance money and interest from the death of the decedent. It is set aside so far as it states an account of income during the decedent's lifetime.

The costs of this appeal to be paid out of the fund.

### WHITE'S APPEAL.

PER CURIAM, April 1, 1895:

This appeal is disposed of so far as it relates to Ellena B. White, by an opinion filed in the appeal of J. M. Titlow et al. from the same decree. The decree as modified by the final order of this court made in that case, is affirmed; with a direction to the orphans' court to inquire into the claims of the Guarantee Trust & Safe Deposit Company before requiring the money to be paid over by the executors, and to award the fund to said company as the trustee of the said Ellena B. White if it shall be found entitled under the alleged trust deed to the custody of the same.

The costs of this appeal to be paid by the appellants.